**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

In re:

**APRIL D. EANES**
**AKA APRIL EANES,**                              **CHAPTER 7**

        **DEBTOR.**                              **CASE NO. 17-31626-KRH**

**WELLS FARGO FINANCIAL SYSTEM VIRGINIA,**
**INC.,**

        **MOVANT,**

**vs.**
**APRIL D. EANES**
**and BRUCE E. ROBINSON, TRUSTEE,**

        **RESPONDENTS.**

**MOTION FOR *IN REM* RELIEF FROM THE AUTOMATIC STAY**
**(REAL PROPERTY LOCATED AT 2331 GEORGES ROAD, POWHATAN, VA 23139)**

<u>NOTICE</u>

<u>YOUR RIGHTS MAY BE AFFECTED.  YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE.  (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)</u>

**TO:**     **APRIL D. EANES, DEBTOR**
           **BRUCE E. ROBINSON, TRUSTEE**
<u>IF YOU DO NOT WISH THE COURT TO GRANT THE RELIEF SOUGHT IN THE MOTION, OR IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE OF THIS MOTION, YOU MUST FILE A WRITTEN RESPONSE EXPLAINING YOUR POSITION WITH THE COURT AND SERVE A COPY ON THE MOVANT.  UNLESS A WRITTEN RESPONSE IS FILED AND SERVED WITHIN THIS FOURTEEN (14) DAY PERIOD, THE COURT MAY DEEM OPPOSITION WAIVED, TREAT THE MOTION AS CONCEDED, AND ISSUE AN ORDER GRANTING THE REQUESTED RELIEF WITHOUT FURTHER NOTICE OR HEARING.</u>

<u>IF YOU MAIL YOUR RESPONSE TO THE COURT FOR FILING, YOU MUST MAIL IT EARLY ENOUGH SO THE COURT WILL RECEIVE IT ON OR BEFORE THE EXPIRATION OF THE FOURTEEN (14) DAY PERIOD.</u>

**THE PRELIMINARY HEARING IS SCHEDULED TO BE HELD ON MAY 17, 2017 AT 11:00 AM IN THE U.S. BANKRUPTCY COURT, 701 EAST BROAD STREET, RICHMOND, VA 23219, COURTROOM 5000.**

       Wells Fargo Financial System Virginia, Inc. ("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362, for ***IN REM*** relief from the automatic stay with respect to certain real property of the Debtor having an address of **2331 Georges Rd, Powhatan, VA 23139** (the "Property"), for all purposes allowed by the Note (defined below), the Deed of Trust (defined below), and applicable law, including but not limited to the right to foreclose.  In further support of this Motion, Movant respectfully states:

Johnie R. Muncy, Esquire
Counsel for Movant
Samuel I White, P.C.
Bar No. 73248
1804 Staples Mill Road
Suite 200
Richmond, VA 23230
(804) 290-4290
File No. 48901

1.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §157 and §1334 and 11 U.S.C. §362(d), and this matter is a core proceeding.

2.      A petition under Chapter 7 of the United States Bankruptcy Code was filed with respect to the Debtor on March 29, 2017.

3.      The Debtor has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $130,555.39 (the "Note").  A copy of the Note is attached hereto as <u>Exhibit A</u>.

4.      Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Deed of Trust are secured by the Property and the other collateral described in the Deed of Trust.  The lien created by the Deed of Trust was perfected by recording of the Deed of Trust in the office of the Clerk of the County of Powhatan, Virginia.  A copy of the recorded Deed of Trust is attached hereto as <u>Exhibit B</u>.

5.      The terms of the Note were amended by a loan modification agreement entered into by and between Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A. and the Debtor dated February 4, 2016 (the "Loan Modification Agreement").   A copy of the Loan Modification Agreement is attached hereto as <u>Exhibit C</u>.

6.      The legal description of the Property is:

**LAND REFERRED TO IN THIS COMMITMENT IS DESCRIBED AS ALL THAT CERTAIN PROPERTY SITUATED IN CITY OF POWHATAN IN THE COUNTY OF POWHATAN, AND STATE OF VA AND BEING DESCRIBED IN A DEED DATED 07/17/2007 AND RECORDED 07/19/2007 IN BOOK 725 PAGE 1042 AMONG THE LAND RECORDS OF THE COUNTY AND STATE SET FORTH ABOVE, AND REFERENCED AS FOLLOWS:**

**CONTAINING 1.52 ACRES, DESIGNATED AS LOT C-90 OF RED LANE SUBDIVISION AND MORE PARTICULARLY DESCRIBED AS FOLLOWS: FROM THE INTERSECTION OF THE WESTERN LINE OF GEORGE'S ROAD AND THE NORTHERN LINE OF EDITH LANE PROCEED ALONG THE WESTERN LINE OF GEORGE'S ROAD N. 10 DEGREES 38" E. 1288.58 FEET TO THE POINT OF BEGINNING; THNCE CONTINUING 22' 36" E. 210 FEET; THENCE N. 79 DEGREES 37' 24" W. 315 FEET S. 10 DEGREES 22' 36" WEST. 210 FEET; THENCE S. 79 DEGREES 37' 24" E. 325 FEET TO THE POINT OF BEGINNING.**

**PARCEL NO. 028-A3-1-C-90**

7.      Upon information and belief, the Debtor has filed successive bankruptcies, which have repeatedly delayed and hindered Movant's efforts to foreclose.  To date, this present case is the Debtor's third bankruptcy filing since November 29, 2016.  The Debtor has filed 3 such bankruptcies, to wit:

a.  Individual Chapter 7 Case #16-35801-KLP filed on November 29, 2016 by Pro Se Debtor, April D. Eanes in the Eastern District of Virginia, Richmond Division.   An order dismissing the case was entered on December 21, 2016 due to failure to file documents.  The Bankruptcy filing cancelled a foreclosure sale scheduled for December 2, 2016.

      b.   Individual Chapter 13 Case #17-30382-KLP filed on January 26, 2017 by Pro Se Debtor, April D. Eanes in the Eastern District of Virginia, Richmond Division. An order dismissing the case was entered on February 16, 2017 due to failure to file documents. The Bankruptcy filing cancelled a foreclosure sale scheduled for February 2, 2017.

      c.   Individual Chapter 7 Case #17-31626 filed on March 29, 2017 by Pro Se Debtor, April D. Eanes in the Eastern District of Virginia, Richmond Division. The Bankruptcy filing cancelled a foreclosure sale scheduled for April 3, 2017.

8.     As of April 10, 2017, the unpaid principal is $123,509.72[1] and the interest balance due is $10,802.01, the approximate outstanding amount of the Obligations less any partial payments or suspense balance is $135,114.13. The loan is contractually due for June 3, 2016.

9.     The estimated value of the Property is $116,400.00. The basis for such valuation is: Tax Assessment, a copy of which is attached hereto as <u>Exhibit D</u>.

10.    Cause exists for relief from the automatic stay for the following reasons:

      i.   Movant's interest in the Property is not adequately protected.

      ii.   Debtor's repeated bankruptcy filings in close proximity to scheduled foreclosure sales demonstrate an abuse of the bankruptcy process designed to frustrate Movant's efforts to pursue its remedies related to the property.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.     Relief from the stay to be granted ***IN REM*** for all purposes allowed by applicable law, the Note, and the Deed of Trust, including but not limited to allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Deed of Trust.

2.     Declaring that any future filing by the Debtor or any co-owners or entities affiliated with them, be ineffective as to the Movant, so that the Movant shall have the right to take lawful action necessary under state law to obtain complete possession of the subject property without further order of this Court or any hearing being necessary.

---

[1] $5,112.36 of this amount is the deferred principal balance and the borrower does not pay interest or make monthly payments on this amount

3.      Extending an equitable servitude to the property located at 2331 Georges Rd, Powhatan, VA 23139, which will bar the imposition of any future bankruptcy by the Debtor, Codebtor, or any co-owners or entities affiliated with the Debtor, in the event they file for bankruptcy relief voluntarily or involuntarily.

4.      That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

5.      For such other relief as the Court deems proper.


Dated: April 17, 2017

WELLS   FARGO   FINANCIAL   SYSTEM VIRGINIA, INC.

By: **/s/JOHNIE R. MUNCY**
Eric D. White, Esquire, Bar No. 21346
Michael T. Freeman, Esquire, Bar No. 65460
Brandon R. Jordan, Esquire, Bar No. 72170
Johnie R. Muncy, Esquire, Bar No. 73248
Nisha R. Patel, Esquire, Bar No. 83302
Samuel I. White, P.C.
1804 Staples Mill Road, Suite 200
Richmond, VA 23230
Tel.: (804) 290-4290
Fax: (804) 290-4298
jmuncy@siwpc.com

CERTIFICATE OF SERVICE

I certify that on April 17 2017, the foregoing Motion was served via CM/ECF on Bruce E. Robinson, Trustee, at the email addresses registered with the Court, and that a true copy was mailed via first class mail, postage prepaid, to April D. Eanes, Pro Se Debtor, 2331 Georges Road, Powhatan, VA 23139.

**/s/JOHNIE R. MUNCY**
Johnie R. Muncy, Esquire
Samuel I. White, P. C.

Exhibit

A

# NOTE

| 05/28/08 | RICHMOND, VA 23235 |
|---|---|
| [Date] | [City, State, Zip] |

2331 GEORGES RD
POWHATAN, VA 23139
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $130555.39 _____ (this amount is called "Principal" and consists of the amount financed plus any points), plus interest, to the order of the Lender. The Lender is Wells Fargo Financial System Virginia, Inc.  I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of _____ 11.25%. This Note is interest bearing.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.    PAYMENTS**

**(A)    Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the _____ 3RD _____ day of each month beginning on _____ 07/03/08 _____ . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on _____ 06/03/28 _____ , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 98784 _____
LAS VEGAS, NV 89193 _____ or at a different place if required by the Note Holder.

**(B)    Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $1369.86 _____ .

**4.    BORROWER'S RIGHT TO PREPAY**

I can prepay my loan at any time. However, if my loan is secured by a lien on a home which is occupied or to be occupied in whole or part by me, and if the Loan Statement indicates that a prepayment penalty may be charged, and my loan is prepaid in whole for any reason (including after a default) within three years of the Date of Loan shown above, Note Holder may charge me a Prepayment Charge equal to the lesser of the following amounts ((A) or (B)): (A) 2% of the then outstanding Unpaid Balance, or; (B) 3% of the original principal balance of this loan if the loan is prepaid during the first year of the loan, 2% of the original principal balance if the loan is prepaid during the second year of the loan and 1% of the original principal balance if the loan is prepaid during the third year of the loan. I agree to pay this Prepayment Charge on the date I payoff my loan. However, regardless of how I prepay my loan, I will never have to pay more than one Prepayment Charge. The prepayment penalty described in this paragraph will be waived if: (a) my loan is prepaid by a loan made by Note Holder or a non-brokered loan by one of Note Holder's affiliates, more than 12 months after the date of this Note; or, (b) as required by applicable state or federal law or regulation.

**5.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

ORIGINAL
VA-2029-0707

This loan and Note are governed by the laws of Virginia.

**I represent and agree that my loan is secured by a first mortgage or deed of trust on residential real estate.**

6.    **BORROWER'S FAILURE TO PAY AS REQUIRED**

    (A)    **Late Charge for Overdue Payments**

    If the Note Holder has not received the full amount of any monthly payment by the end of 7 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% of the full amount of my payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    (B)    **Default**

    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    (C)    **Notice of Default**

    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    (D)    **No Waiver By Note Holder**

    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    (E)    **Payment of Note Holder's Costs and Expenses**

    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7.    **GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

    Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.    **WAIVERS**

    I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10.    **UNIFORM SECURED NOTE**

    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

        If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower

**ORIGINAL**
VA-2029-0707

is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 13 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11.    LOAN STATEMENT RECEIVED**

I acknowledge receiving a completely filled-in Note and Loan Statement before signing this Note or any security instrument which secures the payment of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Borrower

_____ (Seal)
APRIE D'EANES
Borrower

_____ (Seal)

Borrower

_____ (Seal)

Borrower

_____ (Seal)

*[Sign Original Only]*

This is to certify that this is the Note described in and secured by a Deed of Trust dated 05/28/08 on the Property located in POWHATAN (city), POWHATAN (county), Virginia.

My Commission expires: 10/31/2009 Notary Registration Number: 270887

_____
Notary Public

**ORIGINAL**
VA-2029-0707



Without Recourse
Pay to the order of
Wells Fargo Financial, Inc.
as successor by merger to Wells Fargo
Financial System Virginia, Inc.

Merger did not occur

Bruce A. Miller, Vice President and Treasurer
0002

MATHEW Bensley
Vice President
11/03/2012

VOID

Merger did not occur

Without Recourse
Pay to the Order of _____
Wells Fargo Financial
System Virginia, Inc.

By: _Luke W. Reimers_____
Luke W. Reimers, Vice President    0001

BOOK 749 PG. 172

**Exhibit B**

PIN: ▮▮▮▮▮▮▮

Prepared by: Wells Fargo Financial, Inc.
800 Walnut Street
Des Moines, Iowa 50309

Return to:    WELLS FARGO FINANCIAL SYSTEM VIRGINIA, INC.
10419 MIDLOTHIAN TRNPK
RICHMOND, VA 23235

# DEED OF TRUST

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by:
APRIL D EANES A SINGLE PERSON _____

_____ ,

as Borrower (trustor), to TERRANCE ROGERS _____
as Trustee, for the benefit of Wells Fargo Financial System Virginia, Inc., as beneficiary.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 9, 11, 16, 18 and 19. Certain rules regarding the usage of words used in this document are also
provided in Section 14.

(A)    "Security Instrument" means this document, which is dated _____05/28/08_____ , together
with all Riders to this document.

(B)    "Borrower" is APRIL D EANES A SINGLE PERSON _____

_____

Borrower is the trustor under this Security Instrument.

(C)    "Lender" is Wells Fargo Financial System Virginia, Inc. Lender is a corporation organized and
existing under the laws of Virginia. Lender's address is _____10419 MIDLOTHIAN TRNPK_____
RICHMOND, VA 23235_____ .
Lender is the beneficiary under this Security Instrument.

(D)    "Trustee" is TERRANCE ROGERS _____
Trustee (whether one or more persons) is a Virginia resident and/or a United States-or
Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address
is 10419 MIDLOTHIAN TRNPK, RICHMOND, VA 23235_____ .

(E)    "Note" means the promissory note signed by Borrower and dated _____05/28/08_____ . The
Note states that Borrower owes Lender $130555.39_____ (U.S. Dollars) plus interest. Borrower has
promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
____06/03/28____ .

(F)    "Property" means the property that is described below under the heading "Transfer of Rights
in the Property."

(G)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H)    "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be
called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify] _____ |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

(I)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,

Page 1 of 16                                                                          VA-2029-3707

**Represents Redacted Information**

BOOK **749** PG. **173**

ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)**    **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)**    **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)**    **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 4) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M)**    **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N)**    **"Periodic Payment"** means the regularly scheduled amount due for principal and interest under the Note.

**(O)**    **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P)**    **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the _____COUNTY_____ of _____POWHATAN_____ :
     [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

       **The Description of the Property is attached hereto as "Addendum A to Deed of Trust - Description of Property," and is specifically incorporated herein.**

which currently has the address of _____2331 GEORGES RD_____
                                                 [Street]
_____POWHATAN_____ , Virginia _____23139_____ ("Property Address"):
           [City/County]                  [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

RECEIVED 2008/06/23 14:05:43

BOOK 749 PG. 174

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) fees and charges due under the Note; (b) interest due under the Note; and (c) principal due under the Note. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 3.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

4.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 4 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

VA-2029-C707

RECEIVED  2008/06/23 14:05:43

BOOK 749 PG. 175

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 20 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

5.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

6.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 4 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

7.    **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

RECEIVED 2008/06/23 14:05:47

BOOK 749 PG. 176

**8. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying Reasonable Attorneys' Fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**9. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the

RECEIVED 2008/06/23 14:05:42

BOOK 749 PG. 177

third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 17, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 16, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 18) and benefit the successors and assigns of Lender.

**12. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**13. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through

BOOK 749 PG. 178

that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

14. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

15. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

16. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 16, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 13 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

17. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, Reasonable Attorneys' Fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 16.

18. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.

RECEIVED 2008/06/23 14 05 47

BOOK 749 PG. 179

There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

19.  **Hazardous Substances.** As used in this Section 19: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, toxic radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

20.  **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 16 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 20, including, but not limited to, Reasonable Attorneys' Fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement.**

VA-2028-07C7

Page 8 of 10

RECEIVED 2008/06/23 14

BOOK 749 PG. 180

Trustee, without demand on Borrower, shall sell the Property at public auction to the highest
bidder at the time and place and under the terms designated in the notice of sale in one or more
parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the
Property by advertising in accordance with Applicable Law. Lender or its designee may purchase
the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special
warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of
the statements made therein. Trustee shall apply the proceeds of the sale in the following order:
(a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee;
(b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority
over the lien of this Security Instrument, including the due pro rata thereof for the current year;
(c) to discharge in the order of their priority, if any, the remaining debts and obligations secured
by this Security Instrument, and any liens of record inferior to this Security Instrument under
which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to
Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property
prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

21.    Release. Upon payment of all sums secured by this Security Instrument, Lender shall
request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured
by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay
any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only
if the fee is paid to a third party for services rendered and the charging of the fee is permitted under
Applicable Law.

22.    Substitute Trustee. Lender, at its option, may from time to time remove Trustee and
appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the
successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by
Applicable Law.

RECEIVED  2008/06/23 14:05:47

BOOK 749 PG. 181

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN
FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT
OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in
this Security Instrument and in any Rider executed by Borrower and recorded with it.

Borrower

_____ (Seal)
APRIL D EANES

Borrower

_____ (Seal)

Borrower

_____ (Seal)

Borrower

_____ (Seal)

———————— [Space Below This Line For Acknowledgment] ————————

State of Virginia, County/City _Chesterfield_____, ss:

On this __28th__ day of _____May_____, ___2008__ before me personally appeared
APRIL D EANES A SINGLE PERSON

to me known to be the person(s) described and who signed and sealed the foregoing instrument, and
thereupon _S_ he ____ acknowledged that _S_ he ____ executed same as _her_
own free act and deed.

_Ruth E. Johnson_____
Notary Public
Ruth E. Johnson

My Commission expires ___10/31/2009___

__270887__
Notary Registration Number

BOOK 749 PG. 182

### ADDENDUM A
### TO
### DEED OF TRUST

**Description of Property**

LAND REFERRED TO IN THIS COMMITMENT IS DESCRIBED AS ALL THAT CERTAIN PROPERTY SITUATED IN CITY OF POWHATAN IN THE COUNTY OF POWHATAN, AND STATE OF VA AND BEING DESCRIBED IN A DEED DATED 07/17/2007 AND RECORDED 07/19/2007 IN BOOK 725 PAGE 1042 AMONG THE LAND RECORDS OF THE COUNTY AND STATE SET FORTH ABOVE, AND REFERENCED AS FOLLOWS:

CONTAINING 1.52 ACRES, DESIGNATED AS LOT C-90 OF RED LANE SUBDIVISION AND MORE PARTICULARLY DESCRIBED AS FOLLOWS: FROM THE INTERSECTION OF THE WESTERN LINE OF GEORGE'S ROAD AND THE NORTHERN LINE OF EDITH LANE PROCEED ALONG THE WESTERN LINE OF GEORGE'S ROAD N. 10 DEGREES 38" E. 1288.56 FEET TO THE POINT OF BEGINNING; THNCE CONTINUING 22' 36" E. 210 FEET; THENCE N. 79 DEGREES 37 24" W. 315 FEET S. 10 DEGREES 22' 36" WEST. 210 FEET; THENCE S. 79 DEGREES 37' 24" E. 325 FEET TO THE POINT OF BEGINNING.

PARCEL NO. 028-A3-1-C-90

INSTRUMENT #080002957
RECORDED IN THE CLERK'S OFFICE OF
POWHATAN ON
JUNE 5, 2008 AT 10:28AM

WILLIAM E. MAXEY, JR., CLERK
RECORDED BY: RWW

#2957-08
Mailed to:
ValuAmerica
111 Technology Drive
Pittsburgh, PA 15275





# Deferral Agreement

**Date of this Agreement: 02/04/2016**

Borrower(s): **April D Eanes**
Loan Number: ▮▮▮▮▮▮▮▮▮▮
Lender: **Wells Fargo Home Mortgage,** a division of Wells Fargo Bank, N.A.
Property Address: **2331 GEORGES RD  POWHATAN, VA 23139-0000**

We want you to clearly understand the terms of this Deferral Agreement (Agreement). If you have any questions, please ask for an explanation. We use the words you and your to mean the Borrower and the words we, us and our to refer to **Wells Fargo Home Mortgage,** a division of Wells Fargo Bank, N.A.

On **05/28/2008** we made a loan (Loan) to you in the principal amount of **$130,555.00** which is known as the Loan Number referenced above. As of the Date of this Agreement, there is an outstanding balance of **$118,618.11.** As part of this Agreement, the next payment on the Loan is due **March 03, 2016.**

The Loan is currently past due and you have requested assistance because of a temporary hardship. This Agreement will adjust the delinquency amount as follows while retaining the rest of the terms agreed upon in the Note and Security Instrument or any previous modifications:

A.  The current contractual due date will be extended from October 03, 2015 to March 03, 2016.  The first contractual due date after this Agreement has been processed will be March 03, 2016.

B.  The Lender agrees to waive the following amounts:

> ➤ Delinquent Interest in the amount of $709.28.
> ➤ Late Charges in the amount of $0.00.
> ➤ Non-Sufficient Funds Fees in the amount of $0.00.
> ➤ Other Fees in the amount of $511.06.

C.  The amount of the Escrows* to be deferred as a non-interest bearing balance will be $5,112.36.
*Escrows include escrow advances made, escrow installments due up to **February 03, 2016,** and the required escrow balance as of the deferral effective date

D.  The amount of Recoverable Expenses* to be deferred as a non-interest bearing balance will be $0.00.
*Recoverable Expenses may include, but are not limited to: Title, Attorney fees/costs, Property Evaluation expenses, and/or Property Preservation/Property Inspections.

E.  The total non-interest bearing forbearance will be $5,112.36.

Please keep in mind the following:

1)  This Agreement does not change the current rate of interest or the annual percentage rate on your loan. Your account will continue to accrue interest on the unpaid principal balance at the rate  set forth in your Note or Security Instrument;

---

Deferral Agreement

Represents Redacted Information

2)  Escrows and Recoverable Expenses deferred as part of this agreement will be a non-interest bearing portion of your loan balance. In addition, because principal has not been paid down as originally agreed, there may be an additional remaining loan balance.  These amounts will result in a balloon payment and that will be due by the earliest of (i) the date you sell or transfer an interest in the property; (ii) the date you pay the loan in full or (iii) the maturity date, as specified in the Note or Security Instrument. A balloon payment is a final lump sum payment due at the end of your loan. If you do not have the funds to pay the balloon payment when it comes due, you may have to obtain a new loan against your property to make the balloon payment. If you are unable to make the monthly payments or the balloon payment, you may lose the property and all of your equity through foreclosure.

3)  If your loan is an adjustable rate mortgage, the interest rate will continue to adjust according to the terms of your Note or Security Instrument. This agreement **does not** convert an adjustable rate loan to a fixed rate loan.

The original Note and Security Instrument and any previously modified terms and conditions of your loan, will in all respects remain in full force and effect, except when discharged in bankruptcy, in which instance, this Agreement is not intended to imply personal liability, but instead refers to the amounts secured by the Property.
The outstanding loan amounts remain valid and enforceable, and not subject to offset, defense or counterclaim. All liens and security interests securing payment of the indebtedness evidenced by the loan contract remain valid and enforceable, and will continue to secure the payment of the entire indebtedness until such indebtedness (including any future deferrals) is fully and finally paid.

If this Agreement is not returned properly signed and unaltered within 15 business days of the date above, this Agreement will become null and void.

If included, the undersigned Borrower(s) acknowledges receipt and acceptance of the Notice of Special Flood Hazard disclosure.

## CONSENT TO DISCLOSE PERSONAL INFORMATION

By signing this Agreement I/we hereby consent to being contacted concerning this loan at any cellular or mobile telephone number I/we may have. This includes text messages and telephone calls including the use of automated dialing systems to contact my cellular or mobile telephone. You may be billed by your cellular or mobile carrier for any text messages you may receive from **Wells Fargo Home Mortgage,** however any calls we place to your cellular or mobile phone will incur normal airtime charges assessed by your mobile carrier.

**All Borrowers are required to sign and date this Agreement in blue or black ink only as your name appears below.  If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to you to be signed.**

**By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily.  By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.**

_____ (Seal)     _2·10·16_____
April D Eanes                                Date

_____ (Seal)     _____
                                             Date

_____ (Seal)     _____
                                             Date

_____ (Seal)     _____
                                             Date

**Wells Fargo Bank, N.A.**

By: _____

Name: _____         **Asnaku Cherenet**

Title: ___03/01/16_____       **Vice President Loan Documentation**

**For use only if the Borrower is a revocable trust:**
If the Borrower(s) is/are a revocable trust, each trustee must complete and sign the section below. If the Borrower(s) is/are not a revocable trust, this section should be left blank.

_____          _____
     (Trustee 1 Signature)                     (Trustee 2 Signature)

_____          _____
     (Trustee 3 Signature)                     (Trustee 4 Signature)

Trustee(s) of the _____ Trust under trust instrument dated _____, for the benefit of the
              (Name of trust)                        (Date of trust)

Borrower(s):

_____          _____
    (Borrower 1 Signature)                     (Borrower 2 Signature)

_____          _____
    (Borrower 3 Signature)                     (Borrower 4 Signature)

Wells Fargo Home Mortgage is a division of Wells Fargo Bank N.A. ©2015 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID

Deferral Agreement

**Exhibit D**

## *Property Identification Card*

## Record Number: 3371

## POWHATAN COUNTY

### Property Information (Map: 028A3 1C 90)

**Owner:**
EANES APRIL D

**Owner Address:**
2331 GEORGES RD

POWHATAN, VA 23139

**Total Land Area:**
1.520 Acres

**Property Address:**
2331 GEORGES RD
POWHATAN, VA 23139

**Legal Description(s):**
RED LANE-C-90

**Zoned:**

**Prior Assessment:**
$104,000

**Magisterial District:**
SPENCER

**Deed Bk/Pg (Instrument):**
725 / 1042

**Remarks:**

### Assessment Values (Map: 028A3 1C 90)

| | |
|---|---|
| **Building 1:** | $55,800 |
| **Land Value:** | $59,700 |
| **Other Improvements:** | $900 |
| **Total Value:** | **$116,400** |

### Acreage Description (Map: 028A3 1C 90)

| | |
|---|---|
| **Size In Acres:** | 1.00 |
| **Description:** | Homesite |
| **Lump Sum or Per Acre:** | Lump Sum |
| **Unit Value:** | 10,000 |
| **Adjustment Percentage:** | 0.00 |
| **Utility Value:** | 45,000 |
| **Acreage Value:** | $55,000 |
| **Size In Acres:** | .520 |
| **Description:** | |
| **Lump Sum or Per Acre:** | Per Acre |
| **Unit Value:** | |
| **Adjustment Percentage:** | 0.00 |
| **Utility Value:** | 9,000 |
| **Acreage Value:** | $4,680 |
| **Area:** | 0 |
| **Unit:** | |
| **Rate:** | 0.00 |
| **Value:** | |
| **Total Value:** | **$59,680** |

### Other Improvements (Map: 028A3 1C 90)

Represents Redacted Information

| Description: | SHED-FRAME |
|---|---|
| Total Square Feet: | 192 |
| Improvement Value: | $600 |

| Description: | SHED-ATTACHED |
|---|---|
| Total Square Feet: | 42 |
| Improvement Value: | No Value |

| Description: | SHED-FRAME |
|---|---|
| Total Square Feet: | 64 |
| Improvement Value: | No Value |

| Description: | SHED-VINYL |
|---|---|
| Total Square Feet: | 96 |
| Improvement Value: | $300 |

| Description: | A G POOL |
|---|---|
| Total Square Feet: | N/A |
| Improvement Value: | No Value |

**TOTAL VALUE:        $900**

## Sales Information (Map: 028A3 1C 90)

| Sales Date: | 7/19/2007 |
|---|---|
| Sales Price: | |
| Instrument: | Deed Bk/Pg: 725 / 1042 |
| Grantor: | Not On File |

## Transaction History (Map: 028A3 1C 90)

## Building Information (Map: 028A3 1C 90)
## Building 1:
**EXTERIOR INFORMATION**

| Year Built: | 1990 |
|---|---|
| Occupancy Type: | DW MOB HOME |
| Condition: | AVERAGE |
| Foundation: | CINDERBLOCK |
| Exterior Walls: | VINYL |
| Roofing: | COMP SHG |
| Roof Type: | GABLE |
| Garage: | NONE |
| Number of Cars: | None |
| Built-In No. Cars: | None |
| Carport: | NONE |

**INTERIOR INFORMATION**

| Story Height: | 1.00 |
|---|---|
| Number or Rooms: | 5 |
| Number or Bedrooms: | 3 |
| Number or Full Baths: | 2 |
| Number or Half Baths: | None |
| Building Sq. Feet: | 1248 |
| Basement Sq. Feet: | None |
| Fin. Basement Sq. Feet: | None |
| Interior Walls: | DRYWALL |
| Floors: | CARPET |
| Heating: | F. AIR |
| A/C: | YES |

**SITE INFORMATION**

| Zoning Type: | |
|---|---|
| Terrain Type: | ON |

**Character:**              OPEN
**Right of Way:**           PUBLIC
**Easements:**              PAVED
**Water:**                  WELL
**Sewer:**                  SEPTIC
**Electric:**               YES
**Gas:**                    NO
**Fuel Type:**              ELECTRIC
**Utility Value:**          10000
**Fireplace:**              None
**Stk Fireplace:**          None
**Flues:**                  None
**Metal Flues:**            None
**Stacked Flues:**          None
**Inop. Flue/FP:**          None

**Building 1 Sketch**

